United States District Court
Southern District of Texas
FILED

JUN 17 2016

Clerk of Court

# unSEALED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

M-16-1162-M

# FILED

2016 APR -6  PM 6:19

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ Kya
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. |
| Plaintiff, | **SA16CR0254XR** |
| V. | <u>INDICTMENT</u> |

Cnt

JUAN VILLARREAL-ARELIS (2), 1, 6
  aka "Juando"
REYMUNDO VILLARREAL-ARELIS (3), 1, 6
  aka "Mundo"
JOSE LUIS VILLARREAL-GONZALEZ 1, 6
  aka "Nune" (4),
MANUEL VILLARREAL-GARCIA (5), 1

NORMA LETICIA
  VILLARREAL-GARCIA (7), 6, 8
IZA CORINA FLORES-ALANIS (8), 6
JOVANNA VILLARREAL-DIAZ (9), 6

RAYMUNDO VILLARREAL, JR. (15) 7, 9
  aka "Mundito",
GILBERTO
  VILLARREAL-VILLARREAL (16), 7
JUAN ANTONIO VILLARREAL (17), 7
JESUS JAIME ANDRADE (18), 7, 9

JOSE LUIS VILLARREAL-ARELIS (20), 8
  aka "El Cosas"
NANCY ISELA
  VILLARREAL-GONZALEZ (21), 8

Defendants

[VIO: COUNT ONE: 21 U.S.C. 846 {21 U.S.C. 841(a)(1) & 841(b)(1A)(ii)} – Conspiracy to Possess With Intent to Distribute at Least 5 Kilograms of Cocaine, a Schedule II Narcotic Drug Controlled Substance; COUNT TWO, THREE, FOUR, and FIVE: 18 U.S.C. 1343-- Wire Fraud Affecting a Financial Institution; COUNT SIX: 18 U.S.C. 1956(h)  Conspiracy to Launder Monetary Instruments; COUNT SEVEN: 18 U.S.C. 1956(h) Conspiracy to Launder Monetary Instruments; COUNT EIGHT: 18 U.S.C. 1956(h) {18 U.S.C. 1957} -- Conspiracy to Launder Monetary Instruments; COUNT NINE: 18 U.S.C. 371 {31 U.S.C. 5324(a)(3) and 5324(d)} -- Conspiracy to Structure Transactions to Evade Reporting Requirements]

THE GRAND JURY CHARGES:

<u>**COUNT ONE**</u>
**Conspiracy to Distribute at Least Five Kilograms of Cocaine**
**21 U.S.C. 846 {21 U.S.C. 841(a)(1) & 841 (b)(1)(A)(ii)}**

Beginning on at least January 1, 2000, the exact date unknown to the Grand Jury, and continuing until the date of this indictment, in the Western District of Texas, the Southern District of Texas and elsewhere, Defendants,

**JUAN VILLARREAL-ARELIS (2),**
**aka "JUANDO"**
**REYMUNDO VILLARREAL-ARELIS (3),**
**aka "MUNDO"**
**JOSE LUIS VILLARREAL-GONZALEZ (4),**
**aka "NUNE"**
and
**MANUEL VILLARREAL-GARCIA (5),**

and others, both known and unknown to the Grand Jury, did unlawfully, intentionally and knowingly combine, conspire, confederate, and agree together and with each other and others, to possess with intent to distribute a controlled substance, which offense involved at least five (5) kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), and with respect to each defendant, the controlled substances involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is at least five (5) kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, all and in violation of Title 21, United States Code, Section 846.

## COUNTS TWO, THREE, FOUR and FIVE
### Wire Fraud Affecting a Financial Institution
### {18 U.S.C. 1343}

At all times relevant to this indictment:

1. Texas Regional Bank (formerly Border Capital Bank and formerly McAllen National Bank), hereinafter collectively referred to as "the bank," was a financial institution operating in south Texas with branches in McAllen, Texas.

2. Defendant  was a customer of the bank and a citizen of Mexico and the United States.

3. ALAN LAND LP was a Texas limited partnership formed by Defendant ██████████ ██████████ and another person which held as an asset the real property development known as "Riverside Plaza."

4. ALAN MANAGEMENT LLC was a Texas limited liability company formed by Defendant ████ ██████████ and another person which managed ALAN LAND LP.

5. Defendant ██████████ acted as an agent of ALAN LAND LP and ALAN MANAGEMENT LLC.

### THE SCHEME

From on or about January, 2006 and continuing until the date of this indictment, Defendant,  devised and intended to devise a scheme to obtain money and property of the bank, a financial institution, by means of materially false and fraudulent pretenses, representations and promises which conduct affected a financial institution.

3

## MANNER AND MEANS

It was part of the scheme that:

6. In or about October, 2006, Defendant  applied to refinance a loan for the purchase of Riverside Plaza through the bank.

7. During the loan process, Defendant ████████████████ represented to the bank that he had income of approximately $500,000 (and that he was still receiving money) for conducting legal work on behalf of the United States government.

8. Relying on the representation in paragraph 7, among others, the bank loaned Defendant ████ ████████████ approximately $1,695,000 to refinance the original note for the purchase of Riverside Plaza.

9. On or about June 26, 2007; September 10, 2007; April, 2009; and October 29, 2009, Defendant ████████████████ represented to the bank that he had an annual cash inflow well in excess of $500,000, which he earned in part by conducting legal work on behalf of the United States government. Relying on these representations, among others, the bank refinanced the note described in paragraph 8 on or about the listed dates.

10. During each refinancing of the note described in paragraph 9, Defendant ████████████ represented to the bank that his income from the United States government was not taxable. Relying on these representations, among others, the bank refinanced the note described in paragraph 8 on or about the listed dates.

11. On or about February 1, 2011, Defendant ████████████████ represented to the bank that he had received $500,000 from the United States government during 2010 for legal work performed by him.

4

12. On or about February 1, 2011, Defendant ████████████████████████ represented to

the bank that on or about June 30, 2011, he would be due $1,000,000, payable by the United States

government, for legal work performed by him.

13. Relying on the representations identified in paragraphs 11 and 12, among others, the bank loaned

Defendant ██████████████████████ approximately $1,163,127.

14. In fact, as the Defendant well knew when he made the representations identified in paragraphs 11 and

12, he was not then being paid by the United States government for any work performed by him and,

if any such payments had been made and received by him, they were taxable.

15. In support of his loan applications at the bank, Defendant █████████████████

████████████ submitted federal income tax returns for the relevant time periods, which were

transmitted to the bank via electronic mail.

On or about each of the dates set forth below, in the Western District of Texas, the Southern District of Texas and

elsewhere, Defendant,

████████████████████

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by

means of wire communication in interstate commerce the signals and sounds described below for each count,

each transmission constituting a separate count:

| COUNT | DATE | Description |
| --- | --- | --- |
| 2 | August 24, 2007 | A copy of a 2006 Federal Income Tax Return |
| 3 | June 9, 2010 | A copy of a 2008 and a 2009 Federal Income Tax Return |
| 4 | October 5, 2011 | A copy of a 2010 Federal Income Tax Return |
| 5 | October 19, 2011 | A copy of a 2010 Federal Income Tax Return |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SIX
### Conspiracy to Launder Monetary Instruments
### {Title 18 United States Code § 1956(h)}

Beginning on or about January 1, 2000, and continuing until the date of this indictment, and at various times material to this indictment, in the Western District of Texas, the Southern District of Texas, and elsewhere, the Defendants,

**JUAN VILLARREAL-ARELIS (2),**
**aka "JUANDO"**
**REYMUNDO VILLARREAL-ARELIS (3),**
**aka "MUNDO"**
**JOSE LUIS VILLARREAL-GONZALEZ (4),**
**aka "NUNE"**

**NORMA LETICIA VILLARREAL-GARCIA (7),**
**IZA CORINA FLORES-ALANIS (8),**
**JOVANNA VILLARREAL-DIAZ (9),**

together and with others known and unknown to the Grand Jury, did unlawfully, intentionally and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States, as follows:

(a) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, the felonious importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, punishable under any law of the United States, contrary to Title 21, United States Code, Sections 841(a)(1), 846 and Sections 952(a), 960(a)(1) and 963, (2) knowing that the

transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and to avoid a transaction reporting requirement under State and Federal law, contrary to Title 18 United States Code, Section 1956(a)(1)(B);

(b) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, wire fraud affecting a financial institution, contrary to Title 18, United States Code, Section 1343, (2) knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and to avoid a transaction reporting requirement under State and Federal law, contrary to Title 18 United States Code, Section 1956(a)(1)(B);

(c) did transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds (1) from a place in the United States to and through a place outside the United States (2) with the intent to promote the carrying on of specified unlawful activity, that is, the felonious importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, punishable under any law of the United States, contrary to Title 21, United States Code, Sections 841(a)(1), 846 and Sections 952(a), 960(a)(1) and 963 and Title 18, United States Code, Section 1956(a)(2)(A);

(d) did transport, transmit and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds (1) to a place in the United States from and through a place outside the United States (2) knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and (3) knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, the felonious importation, receiving,

7

concealment, buying, selling, and otherwise dealing in a controlled substance, punishable under any law of the United States, contrary to Title 21, United States Code, Sections 841(a)(1), 846 and Sections 952(a), 960(a)(1) and 963, and to avoid a transaction reporting requirement under State and Federal law, contrary to 18 U.S.C. § 1956(a)(2)(B);

All in violation of Title 18, United States Code, Section 1956(h).

<u>COUNT SEVEN</u>
**Conspiracy to Launder Monetary Instruments**
**{Title 18 United States Code § 1956(h)}**

Beginning in or about October, 2009 and continuing until the date of this indictment, and at various times material to this indictment, in the Western District of Texas, the Southern District of Texas, and elsewhere, the Defendants,

**RAYMUNDO VILLARREAL, JR. (15),**
**aka "MUNDITO"**
**GILBERTO VILLARREAL-VILLARREAL (16),**
**JUAN ANTONIO VILLARREAL (17),**
**JESUS JAIME ANDRADE (18),**

together and with others known and unknown to the Grand Jury, did unlawfully, intentionally and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States, as follows: knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, the felonious importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, punishable under any law of the United States, contrary to Title 21, United States Code, Sections 841(a)(1), 846 and Sections 952(a), 960(a)(1) and 963, (2) knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and to avoid a transaction reporting requirement under State and Federal law, contrary to Title 18 United States Code, Section 1956(a)(1)(B) and all in violation of Title 18, United States Code, Section 1956(h).

**COUNT EIGHT**
**Conspiracy to Launder Monetary Instruments**
**{Title 18 United States Code §§ 1957 and 1956(h)}**

Beginning in or about March, 2009 and continuing until the date of this indictment, and at various times material to this indictment, in the Western District of Texas, the Southern District of Texas, and elsewhere, the Defendants,

**NORMA LETICIA VILLARREAL-GARCIA (7),**
**JOSE LUIS VILLARREAL-ARELIS (20),**
**aka "EL COSAS"**
and
**NANCY ISELA VILLARREAL-GONZALEZ (21),**

together and with others known and unknown to the Grand Jury, did unlawfully, intentionally and knowingly combine, conspire, confederate and agree among themselves and each other to knowingly engage in and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, the felonious importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance, punishable under any law of the United States, contrary to Title 21, United States Code, Sections 841(a)(1), 846 and Sections 952(a), 960(a)(1) and 963, contrary to Title 18, United States Code, Section 1957 and all in violation of Title 18, United States Code, Section 1956(h).

## COUNT NINE
### Conspiracy to Structure Transactions to Evade Reporting Requirements
[18 U.S.C. 371 {31 U.S.C. 5324(b)(3) and 5324(d)}]

### THE CONSPIRACY AND ITS OBJECTS

1.  Beginning in or about September 15, 2011, the exact date unknown to the Grand Jury, and continuing until the date of this indictment, and at various times material to this indictment, in the Western District of Texas, the Southern District of Texas and elsewhere, Defendants,

**RAYMUNDO VILLARREAL, JR. (15),**
**aka "MUNDITO"**
**JESUS JAIME ANDRADE (18),**

and others both known and unknown to the Grand Jury, did unlawfully, intentionally and knowingly combine, conspire, confederate and agree, together and with each other and others, for the purpose of evading the reporting requirements of Section 5331(a) of Title 31, United States Code, and any regulation prescribed under such section, to structure and assist in structuring, and attempt to structure, a transaction with Heritage Place, a nonfinancial trade or business, contrary to Title 31, United States Code, Sections 5324(b)(3) and 5324(d).

### MANNER AND MEANS OF THE CONSPIRACY

2.  It was part of the conspiracy that the Defendants would purchase American Quarter Horses from an auction house and would pay for the horses with the proceeds from the sale of illegal controlled substances.

3.  It was further a part of the conspiracy that the Defendants would structure the payments for the horses in order to avoiding having to complete an Internal Revenue Service form 8300, which, if filed, would alert the Internal Revenue Service about the currency transaction and raise suspicion about the source of the funds.

4.  It was further a part of the conspiracy that Defendant DENIS WINN would act as an agent for RAYMUNDO VILLARREAL, JR. aka "MUNDITO" and another person for the purpose of obtaining the horses.

11

**OVERT ACTS**

In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Texas and elsewhere:

5.   On or about September 15, 2011, Defendants RAYMUNDO VILLARREAL, JR., aka "MUNDITO", JESUS JAIME ANDRADE, ███████████ and another person purchased horses at the Heritage Place Quarter Horse yearling sale in Oklahoma City, Oklahoma.

6.   On or about September 27, 2011, Defendant ███████████ was directed to travel to San Antonio, Texas to obtain a large sum of United States currency, generated from the sale of illegal controlled substances, to pay for the horses purchased at Heritage Place as described in paragraph 5.

7.   On or about September 29, 2011, approximately $9,000 in United States currency was paid to Heritage Place for the horses previously purchased as described in paragraph 5.

8.   On or about October 4, 2011, approximately $7,000 in United States currency was paid to Heritage Place for the horses previously purchased as described in paragraph 5.

9.   On or about October 10, 2011, approximately $5,000 in United States currency was paid to Heritage Place for the horses previously purchased as described in paragraph 5.

10.   On or about October 13, 2011, approximately $5,000 in United States currency was paid to Heritage Place for the horses previously purchased in paragraph 5.

11.   On or about October 17, 2011, approximately $9,000 in United States currency was paid to Heritage Place for the horses previously purchased as described in paragraph 5.

12.   On or about October 18, 2011, approximately $9,000 in United States currency was paid to Heritage Place for the horses previously purchased as described in paragraph 5.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed. R. Crim. P. 32.2.]

This Notice of Demand for Forfeiture includes but is not limited to the property described below in Paragraphs V through VII.

### I.
### Drug Violations and Forfeiture Statutes
### [Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, subject to forfeiture pursuant to Title 21 U.S.C. §§ 853(a)(1) and (2).]

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendant(s) listed in said count(s) of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 21 U.S.C. §§ 853(a)(1) and (2), which state:

> Title 21 U.S.C. § 853. Criminal forfeitures
> **(a) Property subject to criminal forfeiture**
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
> > **(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> > **(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation

### II.
### Wire Fraud Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C § 982(a)(2)(A).]

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendant(s) listed in said count(s) of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 31 U.S.C. § 982(a)(2)(A), which states:

> Title 18 U.S.C. § 982. Criminal forfeiture
> . . . .
> > **(a)(2)** The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—

(A) section . . . 1343 . . . of this title, affecting a financial institution . . . shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

## III.
### Money Laundering Violations and Forfeiture Statutes
**[Title 18 U.S.C. §§ 1956(h) and 1957,
subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1).]**

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendant(s) listed in said count(s) of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**Title 18 U.S.C. § 982.   Criminal forfeiture**
(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## IV.
### Structuring Violations and Forfeiture Statutes
**[Title 18 U.S.C. § 371 and Title 31 U.S.C. §§ 5324(b)(3) and 5324(d),
subject to forfeiture pursuant to Title 31 U.S.C. § 5317(c)(1)(A).]**

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendant(s) listed in said count(s) of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 31 U.S.C. § 5317(c)(1)(A), which states:

**Title 31 U.S.C. § 5317(c) Forfeiture.—**
(1) Criminal forfeiture.—
(A) In general.—The court in imposing sentence for any violation of section . . . 5324 of this title, or any conspiracy to commit such violations, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.

**V.**
**Properties**

**Real Properties**

1. Real Property located and situated at **222 East Van Buren and 302 East Harrison, Harlingen, Cameron County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

   PARCEL 1A:   A 1.03 OF AN ACRE PARCEL OF LAND OUT OF AND A PART OF THE G. A. JOHNSON SURVEY, ABSTRACT NUMBER 290, SITUATED IN CAMERON COUNTY, TEXAS, BEING ALL OF LOTS THIRTEEN (13) THROUGH TWENTY-FOUR (24) OF BLOCK SEVENTY-ONE (71) OF HARLINGEN ORIGINAL TOWNSITE MAP AS DEPICTED BY THE INSTRUMENT RECORDED IN VOLUME 2, PAGE 14 OF THE MAP RECORDS OF CAMERON COUNTY, TEXAS.

   PARCEL 1B:   A 1.03 OF AN ACRE PARCEL OF LAND OUT OF AND A PART OF THE G. A. JOHNSON SURVEY, ABSTRACT NUMBER 290, SITUATED IN CAMERON COUNTY, TEXAS, BEING ALL OF LOTS ONE (1) THROUGH TWELVE (12) OF BLOCK SEVENTY-ONE (71) OF HARLINGEN ORIGINAL TOWNSITE MAP AS DEPICTED BY THE INSTRUMENT RECORDED IN VOLUME 2, PAGE 14 OF THE MAP RECORDS OF CAMERON COUNTY, TEXAS.

   PARCEL 2:   A 0.24 OF AN ACRE PARCEL OF LAND OUT OF AND PART OF THE G. A. JOHNSON SURVEY, ABSTRACT NUMBER 290, SITUATED IN CAMERON COUNTY, TEXAS, BEING ALL OF LOTS ONE (1) THROUGH THREE (3) OF BLOCK SEVENTY-TWO (72) OF HARLINGEN ORIGINAL TOWNSITE MAP AS DEPICTED BY THE INSTRUMENT RECORDED IN VOLUME 2, PAGE 14 OF THE MAP RECORDS OF CAMERON COUNTY, TEXAS.

   PARCEL 3:   A 0.16 OF AN ACRE PARCEL OF LAND OUT OF AND A PART OF THE G. A. JOHNSON SURVEY, ABSTRACT NUMBER 290, SITUATED IN CAMERON COUNTY, TEXAS, BEING ALL OF LOTS ONE (1) AND TWO (2) OF BLOCK SEVENTY-NINE (79) OF HARLINGEN ORIGINAL TOWNSITE MAP AS DEPICTED BY THE INSTRUMENT RECORDED IN VOLUME 2, PAGE 14 OF THE MAP RECORDS OF CAMERON COUNTY, TEXAS.

2. Real Property located and situated at **5000 North Cage Boulevard, Pharr, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

A 4.547 ACRE TRACT OF LAND, MORE OR LESS, OUT OF LOT 93, KELLY-PHARR SUBDIVISION, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP RECORDED IN VOLUME 3, PAGES 133-134, DEED RECORDS IN THE OFFICE OF THE COUNTY CLERK OF HIDALGO COUNTY, TEXAS.

3. Real Property located and situated at **San Miguel, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

19.55 ACRE TRACT OF LAND BEING THE EAST 1,260.00 FEET OF THE SOUTH 330.00 FEET OF LOT 125 AND THE SOUTH 330.00 FEET OF LOT 126, JOHN H. SHARY SUBDIVISION, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 1, PAGE 17, MAP RECORDS, HIDALGO COUNTY, TEXAS; NOW KNOWN AS:

1.45 ACRES, BEING ALL OF LOT 1, RIVERSIDE PLAZA AT SHARYLAND, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 51, PAGE 193, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

AND

17.80 ACRES NOW KNOWN AS LOTS 1, 2, 31, 32, AND 33 RIVERSIDE ESTATES AT SHARYLAND, PHASE I, AS PER PLAT RECORDED UNDER INSTRUMENT NUMBER 2323730.

LESS AND EXCEPT:

WARRANTY DEED 02/16/2016 2687080, LOT 32 RIVERSIDE ESTATES AT SHARYLAND PHASE I WARRANTY DEED W/ VENDOR'S LIEN 02/16/2016 2687081, LOT 2, RIVERSIDE ESTATES AT SHARYLAND PHASE I.

4. Real Property located and situated at **3612 North Conway Avenue, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

WEST ADDN TO SHARYLAND 7AC IRR TR N251.3 LOT 30 7 & 7.91 IRR TR W990 N356 LOT30 8 14.91 AC.

5. Real Property located and situated at **10145 North Doffing Road, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

TRACT I: A TRACT OF LAND OUT OF LOTS 131, 132, 135, 136, 137, AND 138, NICK DOFFING CO. SUBDIVISION NO. 1, HIDALGO COUNTY, TEXAS, ACCORDING TO MAP THEREOF RECORDED IN VOLUME 10, PAGE 15, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

TRACT II: AN 8.39 ACRE TRACT OF LAND BEING THAT PORTION OF LOT 134 LYING EAST OF THE CANAL RIGHT OF WAY OF THE RE-SUBDIVISION OF LOTS 120 TO 140, INCLUSIVE THE NICK DOFFING COMPANY SUBDIVISION, NO. 1, HIDALGO COUNTY, TEXAS AS PER MAP THEREOF RECORDED IN VOLUME 10 PAGE 15 OF THE MAP RECORDS OF SAID COUNTY.

6. Real Property located and situated at **2705 Santa Teresa, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

LOT SIXTY THREE (63), SHARYLAND PLANTATION VILLAGE LOS MILAGROS PHASE II, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 39, PAGE 171-172, MAP RECORDS, HIDALGO COUNTY, TEXAS, TO WHICH REFERENCE IS HERE MADE FOR ALL PERTINENT PURPOSES.

7. Real Property located and situated at **3804 San Clemente Court, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

ALL OF LOT 12, SHARYLAND PLANTATION VILLAGE LAGO ESCONDIDO PHASE II SUBDIVISION, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP RECORDED IN VOLUME 43, PAGE 31, MAP RECORDS IN THE OFFICE OF THE COUNTY CLERK OF HIDALGO COUNTY, TEXAS, REFERENCE TO WHICH IS HERE MADE FOR ALL PURPOSES.

8. Real Property located and situated at **3002 Tulip Avenue, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

LOT SEVENTEEN (17), ASHTON ESTATES, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 47, PAGE 2, MAP RECORDS, HIDALGO COUNTY, TEXAS.

9. Real Property located and situated at **3802 San Clemente Court, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

LOT ELEVEN (11), SHARYLAND PLANTATION VILLAGE LAGO ESCONDIDO, PHASE II, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, AS SHOWN BY THE MAP OR PLAT THEREOF RECORDED IN VOLUME 43, PAGE 31, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

10. Real Property located and situated at **2417 East 28th Street, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

LOTS 20 AND 21, ORGANGE ESTATES, PHASE III, AN ADDITION TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF PLAT THEREOF RECORDED IN VOLUME 35, PAGE 24A, MAP RECORDS OF HIDALGO COUNTY, TEXAS.

11. Real Property located and situated at **28th Street, Mission, Hidalgo County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

A TRACT OF LAND CONTAINING 0.514 OF ONE ACRE SITUATED IN THE CITY OF MISSION, HIDALGO COUNTY, TEXAS, BEING PART OF PORTION OF A UNITED IRRIGATION DISTRICT RIGHT-OF-WAY, WHICH LOCATED BETWEEN LOT 275 AND LOT 276, JOHN H. SHARY SUBDIVISION, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 1, PAGE 17, HIDALGO COUNTY MAP RECORDS; ALSO KNOWN AS:

JOHN H SHARY N244.06'-W100' BETWEEN LOT 275 & 276 .56 GR .514 AC NET.

## Horses and Breeding Interests

Any and all horses and breeding interests acquired by the Defendants which represent the property involved in and proceeds from the violations charged in the indictment.

## Farm Equipment

Any and all farm and ranch equipment, including tractors, combines, implements, and tractor-trailer rigs acquired by the Defendants which represent the property involved in and proceeds from the violations charged in the indictment.

## VI.
## Money Judgment

**Money Judgment**: A sum of money equal to **Thirty Million Dollars ($30,000,000.00)** which represents the value of the property involved in, the proceeds from, and the facilitating property from the violations charged in the indictment for which the Defendants assessed a money judgment are jointly and severally liable.

## VII.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendants:

a.  cannot be located upon the exercise of due diligence;
b.  has been transferred or sold to, or deposited with, a third party;
c.  has been placed beyond the jurisdiction of the court;
d.  has been substantially diminished in value; or
e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 21 U.S.C. 853(p) and Fed. R. Crim. P. 32.2(e)(1).

19

A TRUE BILL:

_____
FOREPERSON

RICHARD L. DURBIN, JR.
United States Attorney

By:   CHRISTOPHER M. BLANTON
      Assistant United States Attorney

By:   JAMES STURGIS
      Special Assistant United States Attorney

By:   MARK L. FRAZIER
      Assistant United States Attorney

By:   ADRIAN ROSALES
      Criminal Division,
      United States Department of Justice

20